(23 Misc. Rep. 181.)

### BARNARD v. FITZGERALD et al.

(Supreme Court, Special Term, New York County. March, 1898.)

CORPORATIONS—REORGANIZATION—CHANGE OF PLAN.

A plan for the reorganization of a corporation authorized a committee to issue bonds not to exceed $100,000,000, and provided that the committee should lodge a copy of any proposed change in the plan with certain depositaries, advertise it in certain newspapers, and specify therein a date by which those not assenting to the change might withdraw. After a time the committee issued and published an announcement in various newspapers that no change in the plan was necessary, except that a certain modification might be required to enable the committee to limit the issue of bonds to $75,000,000. The announcement was not lodged with the depositaries, nor did it fix any date at which those dissenting from the change might withdraw. Thereafter a slight modification was regularly announced, and, finally, a statement was published declaring operative the original plan, with the slight modification referred to. *Held*, that the announcement was not a representation by the committee that a deposit of securities with them was upon the condition that no more than $75,000,000 in bonds would be issued, and did not constitute a change of plan.

Action by Arthur W. Barnard against Louis Fitzgerald and others.

Motion to restrain the defendants, constituting the committee for the reorganization of the Union Pacific Railway Company, from issuing, or causing to be issued, for sale, exchange, or delivery, bonds secured by mortgage on the property and franchises of the Union Pacific Railroad Company, in excess of $75,000,000, for reorganization purposes. Denied.

L. J. Morrison and W. H. De Lancy, for plaintiff.

John E. Parsons, Victor Morawetz, and Winslow S. Pierce, for defendants.

CHASE, J.  In the year 1893 the Union Pacific Railway Company became insolvent, and receivers of all the property of that company, and of the various other companies embraced in its system, were appointed. In the year 1894 a committee was formed for the pur-

pose of undertaking a reorganization of the system, and of adjusting the claims of the United States government against its property. This committee was unsuccessful in its endeavor to effect an adjustment of the claims of the United States government or of formulating a plan of reorganization, and it was dissolved. Thereafter a committee, consisting of the individual defendants in this action, was formed, and on or about the 15th day of October, 1895, adopted and publicly announced a plan and agreement of reorganization. Provision is made in this plan for the creation of first mortgage railway and land grant 4 per cent. gold bonds to the amount of $100,000,000. By the plan it is provided that there shall be set apart for reorganization purposes $51,244,700 of the first mortgage bonds and certain specified amounts of the new preferred and common stock. The remainder of the new securities, the plan provides, shall be reserved to be disposed of for equipment obligations, and for reorganization purposes, and for settlement of the debt to the United States, and for extraordinary requirements. The agreement further provides:

"The depositors hereunder hereby request the committee to endeavor to carry into practical operation this agreement, including the foregoing plan of reorganization, in its entirety or in part, to such extent and in such manner, and with such additions, exceptions, and modifications, as the committee shall deem to be for the best interests of the depositors."

The agreement also provides:

"The amount to be bid or paid by the committee for any property or franchises shall be absolutely discretionary with it; and, in case of the sale to others of any property or franchise, the committee may receive out of the proceeds of such sale or otherwise any dividend in any form accruing on any securities held by it. The enumeration of specific powers hereby conferred shall not be construed to limit or to restrict general powers herein conferred, or intended so to be; and it is hereby distinctly declared that it is intended to confer on the committee, and each depositor hereunder hereby confers on the committee, in respect of all securities deposited or to be deposited, and in all other respects, any and all powers necessary or expedient, or which the committee may deem necessary or expedient, in or towards carrying out or promoting the purposes of this agreement in any respect, even though any such power be apparently of a character not now contemplated; and the committee may exercise any and every such power as fully and effectively as if the same were herein distinctly specified, and as often as for any cause or reason it may deem expedient. And it is further understood and agreed that the methods to be adopted for or towards carrying out this agreement shall be entirely discretionary with the committee."

The agreement also provides:

"The committee shall have absolute and complete discretion and latitude in the use, disposition, or distribution of all securities of the new company which are specified in the plan as reserved, for purposes therein stated, and which are in excess of the securities there embraced in the defined issues for reorganization purposes; and it may use, dispose of, distribute, or apportion any of such reserved securities of the new company in any manner and upon any terms which it may deem expedient or advisable to promote or accomplish the substantial objects and purposes of the plan and of this agreement."

The agreement also provides:

"The committee may construe this agreement (including the plan of reorganization), and its construction thereof or action thereunder in good faith shall be final and conclusive. The committee may supply any omission or correct any error in the plan or in this agreement, and may modify or depart from any provisions thereof which it shall unanimously deem not to be substantial."

When, in the opinion of the committee, any change or alteration proposed is a substantial change, the agreement provides that a copy of the proposed change or alteration shall be lodged with each of the depositaries named in the agreement, and a notice thereof shall be advertised in the manner specified in the agreement, namely, in two or more daily papers of general circulation published in the city of New York, and in one or more daily papers of general circulation published in the cities of London, Boston, Amsterdam, and Frankfort, respectively, twice in each week, for two successive weeks; and the agreement further provides that any holders of receipts or certificates of deposit who do not assent to such alteration may, at any time before a day specified in such advertisement, which date shall be at least 20 days after the first publication of such advertisement, withdraw the securities represented by their receipts or certificates of deposit upon surrendering their said receipts or certificates of deposit to the proper depositary.

The provisions of the agreement that I have quoted, and other provisions of said agreement, gave to the committee almost unlimited power and discretion in carrying out the plan and agreement for reorganization, and in the use, disposition, and distribution of all securities of the new company to be organized. The limitations of the committee consisted in an express provision that the total amount of new securities to be created, as set forth in the plan ($100,000,000), shall not be increased, and the provisions that I have quoted providing that when, in the opinion of the committee, any substantial change or alteration of the plan or agreement is necessary, a notice thereof should be lodged with the depositaries and advertised as stated. The plan and agreement consisted of a statement setting forth the mileage, land possessions, funded and other debts, past earnings, and probable future earnings of the Union Pacific Railway system in detail; the proposed plan for the reorganization of said railway company; and the proposed agreement between the defendants as such committee and the bond and stockholders of said company who should assent thereto. There was also attached to the plan and agreement a circular containing a general statement on the part of the committee. Among other things, the plan provided for an assessment on the common stock of the company at the rate of $15 per share. Prior to the 26th day of January, 1897, the agreement had been signed by a large part of the security holders of the Union Pacific main lines proper, inclusive of the Kansas Pacific line, and such security holders had complied with the conditions of the agreement. On that day the committee issued a written announcement stating:

"The undersigned reorganization committee announces that, having reached an agreement with the United States government (alike advantageous to the latter, as well as to the interest the committee represents), steps have been taken to promptly proceed with the reorganization. No material modification of the plan appears to be necessary, except that the two classes of the junior bonds, viz. Union Pacific sinking fund bonds and Kansas Pacific consolidated bonds, upon final completion of the necessary arrangements, may have to be offered a somewhat smaller allotment in new first mortgage bonds against an increased allotment of preferred stock, so as to enable the committee to limit the issue of new first mortgage 4% bonds (which under the plan was fixed at $100,-

000,000) to $75,000,000 for reorganization purposes, reserving the balance, under careful restrictions, for the future needs of the reorganized company, thus materially enhancing the standing and value of both the bonds and shares of the new company."

This announcement also stated:

"While modifications in the other features of the plan appear not to be required under present conditions, the committee deems it prudent to postpone the formal declaration that the plans all become operative until it feels assured that the carrying into final effect of its arrangement with the United States government will create no conditions other than now prevail."

The plaintiff is the owner of 500 shares of the common stock of the Union Pacific Railway Company which have been deposited in accordance with the agreement and on which the assessment has been paid. It is claimed by the plaintiff that the announcement made by the committee on the 26th day of January, 1897, was a substantial alteration and modification of the plan and agreement. He also claims that this announcement was published in various newspapers in the cities of the United States and on the European continent, and that the payment of the assessment on the common stock by the plaintiff and others was paid relying upon such announcement that but $75,-000,000 of the new first mortgage bonds would be used for reorganization purposes, and that the balance of $25,000,000 would be reserved for the future needs of the reorganized company. Pursuant to the agreement of October 15, 1895, a company has been organized known as the Union Pacific Railroad Company, and the property and franchises of the Union Pacific Railway Company system have been purchased by persons representing the defendants the reorganization committee; and a first mortgage of $100,000,000 has been executed, with the sanction of the directors and stockholders of said defendant the Union Pacific Railroad Company, to secure bonds as provided by said agreement. Up to the present time $71,235,000 of these bonds have been issued and delivered, and the proceeds used for reorganization purposes, and it is the intention of the reorganization committee that there be issued and delivered other bonds for reorganization purposes in addition to those already issued and delivered, to an amount in all of $90,000,000. On the 25th day of June, 1897, the committee published a statement declaring "operative its plan of reorganization dated October 15, 1895, with the modifications heretofore published." It is claimed by the plaintiff that this announcement on the part of the committee was a declaration that the plan of October 15, 1895, was operative, with the modifications specified in the announcement of January 26, 1897. The defendants claim that the announcement of January 26, 1897, was a circular merely, which, by the express terms of the agreement, was not to operate as a representation or as a warranty or as a condition of the deposit of securities thereunder. The announcement of January 26, 1897, was never lodged with either of the depositaries under the agreement; notice thereof was never advertised, as provided by the agreement; neither was there any day specified therein on or before which holders of receipts or certificates of deposit could withdraw their securities, as provided by the agreement. It is further asserted by the defendants that this announcement was

never intended by them to effect a change, alteration, or amendment of the plan and agreement of reorganization, and that it was never adopted as such, but was advertised to the extent it was advertised for the purpose of announcing to the bondholders and shareholders the progress of the committee in carrying out the plan and agreement. On the 26th day of February, 1897, the plan and agreement was modified by recasting the allotment of new securities applicable under its plan of reorganization to the Union Pacific sinking fund bonds and the Kansas Pacific consolidated first mortgage bonds, but no limit was placed upon the amount of the first mortgage bonds to be used by the committee for reorganization purposes, and in the notice of the proposed change and alteration a date was specified before which holders of receipts or certificates of deposit, who did not assent to the alteration, could withdraw their securities, as provided by the agreement. There is nothing in the papers before me justifying even a suggestion of bad faith on the part of the committee. By the express terms of the agreement of October 15, 1895, an alteration that, in the opinion of the committee, would make a substantial change, could only be made in the manner specified in the agreement. The announcement of January 26, 1897, does not specify a date before which holders of receipts or certificates of deposit, who did not assent to the alteration, could withdraw their securities, as provided by the agreement. This announcement does not purport to be in the form provided by the agreement for the purpose of altering or modifying the agreement. On the face of this announcement, it is evident that the committee did not intend the same as a modification or alteration of the agreement of October 15, 1895, but it merely shows that the committee did contemplate the possibility or probability of modifications of the plan at some future time. This announcement was never deposited or advertised as provided by the agreement, where a change and alteration was intended, and, even if the same had been deposited and advertised, it is doubtful whether the same would be binding on the part of the security holders, for the reason that it does not specify, or purport to specify, a date on which nonassenting security holders could withdraw their securities. When the committee announced on the 25th day of June, 1897, that the plan of reorganization dated October 15, 1895, with the modifications heretofore published, was operative, it must be assumed that they referred to, and they did in fact refer to, the alterations made in accordance with the express provision of the original agreement. I am of the opinion that the announcement of January 26, 1897, was not intended as a change of the original plan and agreement, and, as the same was not lodged with the depositaries or published in accordance with the agreement, the committee are not bound thereby, and the statement therein did not constitute a representation or warranty binding upon the committee, or a condition of the deposit of securities thereunder, and the committee now have full authority, in their discretion, to use $90,000,000, or any other amount, not exceeding $100,000,000, of the first mortgage bonds of the new company for reorganization purposes.

Motion denied, with costs.